IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBERT S. HICKEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 16 CV 2337 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security,[1] ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Robert Hickey's ("Plaintiff") claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 16] is granted in part. The case is remanded for further proceedings consistent with this Opinion.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

On September 5, 2012, Plaintiff protectively filed a claim for DIB, alleging disability since November 19, 2005. (R. 34, 188–89.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

Administrative Law Judge ("ALJ"). (*Id.*) On May 23, 2014, Plaintiff, represented by counsel, appeared and testified by video before ALJ Edward Studzinski. (R. 54–102.) Vocational expert ("VE") Matthew Lampley also testified. (*Id.*)

On September 9, 2014, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. (R. 34–48.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 19, 2005, through his date last insured of December 31, 2010. (R. 36.) At step two, the ALJ concluded that Plaintiff had the severe impairments of degenerative and discogenic disorders of the spine, and residual pain and limitation resulting from lumbar spine surgery. (*Id.*) The ALJ indicated at step three that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 37.) The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and determined the following:

> The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), occasionally lifting and/or carrying a maximum of 20 pounds; frequently lifting and/or carrying 10 more frequently; no limitations in sitting, standing, and/or walking

2

in an 8 hour workday. However, the claimant can assume any one position for no more than 60 continuous minutes. After sitting, standing, and/or walking for 60 continuous minutes, the claimant would then need to assume a different position for up to five (5) minutes before resuming the prior position. While alternating position in this manner the claimant would not need to abandon his workstation or lose track of his assigned job duties. The claimant is able to use the bilateral upper and lower extremities frequently but not constantly for pushing and/or pulling and the operation of foot controls. The claimant should never climb ladders, ropes or scaffolds, and should no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The claimant is not to perform constant/repetitive or extreme (*more than 75% of the normal range of motion (ROM)*) neck motions. The claimant should not drive or operate moving machinery at work, and should never work at unprotected heights, around exposed flames, or around unguarded large bodies of water. The claimant should avoid concentrated exposure to unguarded, hazardous machinery. The claimant is limited to jobs that require the performance of no more than simple, routine, repetitive tasks, simple decision-making, occasional, minor changes in the work setting, and jobs that require no more than simple judgment.

(R. 38.) At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (R. 46.) Finally, at step five, the ALJ found that prior to December 31, 2010, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as bench assembler or electrical assembler. (R. 47–48.) Because of this determination, the ALJ found that Plaintiff had not been disabled during the material period at issue. (R. 48.)

## **DISCUSSION**

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant suffers from a disability, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps one through four. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496

F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Plaintiff asserts the following errors on appeal: (1) the ALJ's RFC determination was erroneous and not supported by substantial evidence; (2) the ALJ failed to give the appropriate weight to the opinion of Plaintiff's treating physician; and (3) the ALJ made improper credibility determinations and failed to properly articulate his reasons. [Doc. No. 16, at 8–22.] For the reasons that follow, this matter is remanded for further proceedings consistent with this Opinion.

### A. The ALJ Failed to Support His RFC Assessment with Substantial Evidence

Plaintiff first contends that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ failed to adequately explain the basis for his findings. [Doc. No. 16, at 8–13.] "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *See Young*, 362 F.3d at 1002.

7

### *1. Sitting, Standing, and Walking*

First, Plaintiff asserts that the ALJ erred by failing to explain how the evidence supported the specific parameters of the positional limitations he included in his RFC assessment, namely that while Plaintiff had no limits in sitting, standing, or walking during an eight-hour workday, he could only remain in any one of those positions for sixty minutes continuously, and would then need to assume a different position for five minutes before resuming the initial position. [Doc. No. 16, at 8–13.] The Court agrees. An ALJ is required to build "an accurate and logical bridge from the evidence to [his] conclusions." *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003). Pursuant to SSR 98-6p, "[t]he RFC assessment must include a *narrative discussion* describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7 (emphasis added). Likewise, "[a]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford,* 227 F.3d at 870; *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011) ("ALJ did not identify any medical evidence to substantiate her belief that [claimant] is capable of meeting those physical requirements."); *Blakes,* 331 F.3d at 570 (finding an ALJ improperly "play[s] doctor" when he makes a medical conclusion without expert evidence).

Here, contrary to the requirements of SSR 96-8p, the ALJ did not explain what support he relied on or how he arrived at the calculations for positional

limitations he included in the RFC. *See Briscoe,* 425 F.3d at 352 ("[c]ontrary to SSR 96-8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."). Specifically, there is no narrative discussion of what medical evidence led the ALJ to conclude that a break from continuous sitting, standing, or walking after sixty minutes (as opposed to earlier or later), or why assuming a different position for five minutes (rather than a shorter or longer amount of time) before returning to the initial position would adequately account for Plaintiff's alleged pain and related limitations in sitting, standing, and walking.

Similarly, the ALJ did not discuss any testimonial evidence to explain the parameters of the positional limitations. In doing so, the ALJ failed to reconcile his finding that Plaintiff could sit, stand, or walk continuously for sixty minutes with the specific contradicting evidence offered by Plaintiff during his testimony. SSR 96–8p also requires the ALJ to explain "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved" and to give "a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." SSR 96-8p, at *7. Plaintiff testified he could he could sit for no more than fifteen minutes at a time, stand for no more than twenty minutes at a time, and walk for no more than fifteen minutes at a time. (R. 80.) The Court does not know if the ALJ considered these symptoms statements when concluding that Plaintiff could sit, stand, or walk continuously for sixty minutes

9

before needing to change positions for five minutes. *See Williams v. Berryhill*, 2017 WL 3130763, at *8 (N.D. Ill. July 24, 2017).

The ALJ provided no medical evidence or medical opinion that specified that Plaintiff could sit, stand, or walk continuously for sixty minutes, assume a different position for five minutes, and then return to the initial position. Neither the ALJ nor the Commissioner cited any physician opinion or medical evidence in the record that supported the notion that the specified time interval would be adequate to accommodate Plaintiff's back and neck pain. The ALJ's silence as to what medical or testimonial evidence he relied upon to formulate these parameters leaves the Court unable to "trace the path of [his] reasoning." *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

### *2. Neck Range of Motion*

Similarly, Plaintiff argues that the ALJ failed to explain the basis for his restrictions pertaining to Plaintiff's neck range of motion, namely that Plaintiff was restricted from engaging in constant, repetitive, or extreme (defined as more than 75% of the normal range of motion) neck motions. Again, the Court agrees.

A January 31, 2009 MRI of the cervical spine revealed reduced cervical lordosis and degenerative disc disease at C5-C6 and C6-C7. (R. 437.) There was also evidence of a left lateral disc protrusion at C6-C7, causing moderately severe left foraminal stenosis. (*Id.*) Plaintiff's treating neurosurgeon, Dr. Espinosa, indicated that this MRI evidence "clearly accounts for [Plaintiff's] neck and arm symptoms." (*Id.*). An April 15, 2009 discogram indicated that the C6-C7 level reproduced

10

Plaintiff's typical neck pain. (*Id*.). At a follow-up appointment with Dr. Espinosa on August 7, 2009, Plaintiff reported that he continued to suffer from 8/10 pain in his posterior neck with pins and needles radiating down his left arm. (R. 435.) Dr. Espinosa noted that Plaintiff had previously received three cervical epidural steroid injections which provided only minimal relief. (*Id*.) On physical examination, Dr. Espinosa found diffuse tenderness in the cervical spine centered at C6 and C7, and decreased range of motion of the cervical spine. (R. 435–36.) Based upon these findings and the MRI and discogram evidence, Dr. Espinosa recommended an anterior cervical discectomy and fusion. (R. 437.)

The ALJ explained:

> "In consideration of the claimant's problems with his neck/cervical spine and his doctor's recommendation that the claimant undergo a cervical fusion, I have restricted him to no performing of constant/repetitive or extreme (*more than 75% of the normal range of motion (ROM)*) neck motions. However, the claimant is able to frequently (two-thirds of the workday) move his neck in any direction up to 75% of the normal ROM.

(R. 46) (emphasis in original). This explanation falls short. As before, the issue is that the ALJ provided no logical bridge for the Court to trace the path of his reasoning. No physician offered an opinion as to Plaintiff's neck pain or limitations. Nor did the ALJ ask a medical expert about Plaintiff's capabilities in this area. Indeed, "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). Since no treating or agency doctor opined about range of motion limitations,

11

the Court is left to wonder how the ALJ determined that Plaintiff could not engage in constant, repetitive, or extreme neck motion.

In addition, the ALJ stated that the findings from the January 2009 MRI of the cervical spine "would account for some of the claimant's neck symptoms, but do not support greater limitations than I found." (R. 44.) Without further explanation, the Court is unable to follow this logic. Moreover, the ALJ's mere mentioning of the MRI results does not shed light on how he concluded that limitations he added to the RFC were sufficient to account for Plaintiff's neck symptoms. "Summarizing medical evidence is no substitute for actual analysis of medical evidence." *Erwin v. Astrue*, No. 11 CV 1555, 2012 WL 3779036, at *8 (N.D. Ill. Aug. 30, 2012); *Moon*, 763 F.3d at 722 ("ALJ's are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Purvis v. Berryhill*, 2017 WL 1022014, at *13 (N.D. Ill. March 16, 2017) (remanding because "the ALJ imposed an additional restriction on the Plaintiff but offered no explanation as to how he decided between an occasional or frequent stooping limitation.").

Accordingly, the ALJ's RFC determination was not supported by substantial evidence and the case is remanded for further consideration of the RFC. *See Daniels v. Colvin*, No. 15 C 9148, 2016 WL 7116582, at *13 (N.D. Ill. Dec. 7, 2016). The Court, however, is not suggesting that the ALJ's RFC determination is incorrect, but only that greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski*, 245 F.3d at 888.

## B. Remaining Arguments

Because remand is required based on the errors identified above, the Court need not address Plaintiff's remaining arguments at this time. The Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue,* 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor. On remand, the Commissioner therefore must carefully articulate her findings as to every step.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 16] is granted in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

**DATE:  November 2, 2017**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**